UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MAHMOOD RAJA,                          :  11 Civ. 3490 (JCF)
                                       :
              Plaintiff,               :      MEMORANDUM
                                       :  <u>OPINION AND ORDER</u>
      - against -                      :
                                       :
MICHAEL J. ASTRUE, Commissioner of :
the Social Security Administration,:
                                       :
              Defendant.               :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

In some Social Security cases, error by the Administrative Law Judge (the "ALJ") warrants reversal and an immediate award of benefits.   In others, it is appropriate to remand so that evidentiary gaps may be filled.   And in some cases, this one included, the fairest result is to reverse outright to the extent disability has been established but remand for further development of the record as to those issues that are still fairly contested.

Plaintiff Mahmood Raja seeks review under 42 U.S.C. §§ 405(g) and 1383(c) of a determination of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Supplemental Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI").   The Commissioner opposes the plaintiff's motion for judgment on the pleadings and moves for remand of the case for

further administrative proceedings regarding a determination of the plaintiff's disability, pursuant to the fourth sentence of 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the plaintiff's motion for judgment on the pleadings is granted in part, the Commissioner's motion for remand is granted in part, the decision of the Commissioner is reversed, and the case is remanded for calculation of benefits from January 1, 2005, and for a determination of whether Mr. Raja is entitled to an earlier disability onset date.[1]

Background

Mahmood Raja was born on December 25, 1959 in Pakistan. (Administrative Record ("AR") at 108). He obtained a fifth-grade level education there, and although he can read and write in his native Urdu, his English communication skills are very limited. (AR at 33). The plaintiff's comprehension of English is poor, and he is unable to read or write anything except his name and address. (AR at 37-38). Mr. Raja moved to the United States in 1985 and became an American citizen. (AR at 33, 59). He worked full-time as an auto mechanic from 1992 to 2005, earning a regular salary (AR at 126-27), and he held a part-time position -- working an average of 10 hours per week -- in customer service

---

[1] The parties have consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

in an auto repair shop from 2005 to 2007 (AR at 42, 56-57).  The plaintiff stopped working altogether in September 2007.  (AR at 44).

A.   Medical History

In September 2003, Mr. Raja was diagnosed with severe heart disease of the left main artery, left circumflex artery, and right coronary artery.  (AR at 245).  He underwent triple coronary bypass surgery, which involved three veinal and arterial grafts and the placement of an intra-aortic balloon pump.  (AR at 246).  In May 2004, a follow-up examination showed no infiltrate, effusion, congestive heart failure, or cardiomegaly.  (AR at 422).

Between 2005 and 2006, Mr. Raja was under the treatment of his primary care physician, Ajay Verma, M.D., whom he saw monthly, and his cardiologist, Rajiv Sindhwani, M.D. (AR at 46-47, 428).  During this period, Dr. Verma noted increased tingling and numbness in Mr. Raja's legs, dizziness, and an abnormal sensation on the left side of his head and neck.  (AR at 468, 471, 474).  He was prescribed medications to treat high cholesterol, heart failure, high blood pressure, diabetes, dizziness, and pain in his left leg and arm.  (AR at 44, 526).

On February 21, 2007, an ultrasound examination of Mr. Raja's carotid arteries found minimal plaque and no evidence of carotid stenosis.  (AR at 490).  On February 23, 2007, Dr.

Sindhwani completed a residual functional capacity questionnaire. (AR at 79, 82). He listed Mr. Raja's medical impairments as high blood pressure and high blood sugar, with the following symptoms: chest pain, anginal equivalent pain, shortness of breath, fatigue, and weakness. (AR at 79). Mr. Raja's cardiac symptoms were severe enough to interfere occasionally with the attention and concentration needed to perform simple work tasks. (AR at 80). He could walk for 1-2 blocks and sit for two hours out of an eight-hour work day. (AR at 81). He would need to take 30 minute breaks to lie down every two to three hours. (AR at 81). Dr. Sindhwani opined that Mr. Raja could lift and carry less than ten pounds occasionally, and ten pounds rarely. He could rarely twist but never stoop, crouch or squat, climb ladders, or climb stairs. (AR at 81). Dr. Sindhwani estimated that Mr. Raja would have to miss more than four days of work per month because of his condition. (AR at 82).

Dr. Verma ordered or performed a series of tests in late May 2007. A chest x-ray found no signs of active disease, and an electrocardiogram revealed normal sinus rhythm and no ventricular or atrial ectopy. (AR at 493-95). Dr. Verma indicated that Mr. Raja's ability to lift and carry was severely limited: he could not lift any amount of weight occasionally, and the maximum amount of weight he could lift was three pounds. (AR at 255). He could stand and walk for two hours out of an eight-hour work

day, but had no limitations on the amount of time he could sit.
(AR at 255).   In October 2007, and electrocardiogram noted
"consider left atrial enlargement."  (AR at 498).

In February 2008, an echocardiogram again indicated
"consider left atrial enlargement," as well as "borderline [sinus
tachycardia] elevation."   (AR at 497).   That same month,
laboratory testing showed that Mr. Raja suffered from peripheral
arterial disease ("PAD") in addition to heart disease.  (AR at
487).   This diagnosis included moderate stenosis of the left
common and superficial femoral arteries as well as mild stenosis
of the right superficial femoral artery, and buildup of bilateral
arterial plaque, which caused intermittent claudication (i.e.,
cramping,  discomfort,  pain,  and  fatigue  that  results  from
decreased blood flow in the legs).  (AR at 461, 486, 487).

In July 2008, another echocardiogram indicated "consider
left atrial enlargement."  (AR at 496).  In October of that year,
Dr. Verma completed a form assessing Mr. Raja's physical ability
to perform work-related activities.   (AR at 452).   Dr. Verma
found that Mr. Raja was able to walk for only 15 to 20 minutes,
or up to two blocks, and to stand for five to ten minutes before
having to rest.  (AR at 453).   He could sit for one hour without
interruption.   (AR at 453).   In an eight-hour workday, the
plaintiff could sit for six hours, stand for one hour, and walk
for one hour.   (AR at 453).   He was unable to lift or carry

anything weighing up to 10 pounds.  (AR at 452).  With his right hand he could occasionally reach, handle, finger, and feel, but could not push or pull.  (AR at 454).  With his left hand he could never reach overhead but could occasionally reach in other ways; occasionally handle, finger, and feel; and never push or pull.  (AR at 454).  While he could occasionally climb stairs, climb ramps, and balance, he could not climb ladders, stoop, kneel, crouch, or crawl.  (AR at 455).  Mr. Raja could not tolerate any exposure to dust or chemicals or extreme heat or cold.  (AR at 456).  The physician estimated that these limitations had existed since late 2002 to 2003.  (AR at 457).

In November 2008, Dr. Verma reassessed Mr. Raja.  (AR at 429, 432).  He listed the plaintiff's conditions as hypertension, arteriosclerotic heart disease, diabetes mellitus, and PAD.  (AR at 429).  Dr. Verma opined that Mr. Raja's cardiac symptoms would occasionally interfere with the attention and concentration needed to perform simple tasks.  (AR at 430).  He could stand and walk for less than two hours in an eight-hour workday and sit for six hours with normal breaks.  (AR at 431).  Mr. Raja would need to take unscheduled breaks during the work day to lie down.  (AR at 431).  He could rarely carry less than ten pounds, and never more than ten.  (AR at 431).  His mobility was restricted so that he could rarely twist, stoop, crouch, squat, and climb stairs, and never climb ladders.  (AR at 431).  Dr. Verma asserted that

Mr. Raja would need to miss work more than four days per month. (AR at 432). He could not tolerate any exposure to dust or chemicals or extreme heat or cold. (AR at 432). According to Dr. Verma, these limitations had existed since 2003. (AR at 432).

    B.   Applications for DIB and SSI

On January 30 and January 31, 2007, Mr. Raja filed applications for DIB and SSI, respectively, asserting a disability onset date of September 5, 2002. (AR at 108-114). Both applications were denied on June 22, 2007. (AR at 66-71). Mr. Raja requested review by an Administrative Law Judge, and a hearing was held on November 18, 2008, before ALJ Frank Borda. (AR at 32).

At the hearing, the plaintiff testified that he had continuous pain in his left arm and shoulder and pain and numbness in his left leg and both feet. (AR at 45, 48, 57). He said he was capable for sitting for 20 minutes at a time, could stand and walk for 10 to 15 minutes, and could walk for two blocks before he became short of breath. (AR at 51, 54). He stated that he could lift five to six pounds with his right hand, but nothing with his left. (AR at 52). He also said he suffered from shortness of breath and dizziness. (AR at 53).

ALJ Borda issued a ruling on January 14, 2009, finding that Mr. Raja was not disabled. (AR at 29). The Commissioner

adopted the ALJ's decision as final when the Appeals Council denied the plaintiff's request for review on March 23, 2011. (AR at 1).

<u>Applicable Law</u>

    A.   <u>Standard of Review</u>

A court reviewing the Commissioner's decision "may set aside a decision of the Commissioner if it is based on legal error or if it is not supported by substantial evidence." <u>Hahn v. Astrue</u>, No. 08 Civ. 4261, 2009 WL 1490775, at *6 (S.D.N.Y. May 27, 2009) (quoted source omitted); <u>Longbardi v. Astrue</u>, No. 07 Civ. 5952, 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009); <u>Bonet v. Astrue</u>, No. 05 Civ. 2970, 2008 WL 4058705, at *2 (S.D.N.Y. Aug. 22, 2008). Judicial review, therefore, involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal standard. <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999); <u>Calvello v. Barnhart</u>, No. 05 Civ. 4254, 2008 WL 4452359, at *8 (S.D.N.Y. April 29, 2008). Second, the court must decide whether the ALJ's decision was supported by substantial evidence. <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); <u>Longbardi</u>, 2009 WL 50140, at *21. Substantial evidence in this context is "'more than a mere scintilla.' It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Hahn</u>, 2009 WL 1490775, at *6 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u>

Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson, 402 U.S. at 401). "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Longbardi, 2009 WL 50140, at *21; see also Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam).

Courts in this Circuit have held that an ALJ's "failure to acknowledge relevant evidence or explain its implicit rejection is plain error." Longbardi, 2009 WL 50140, at *22 (quoting Kuleszo v. Barnhart, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002)). Generally, when there has been legal error or a failure to develop the record, a reviewing court "'should reverse the Commissioner's decision and remand the appeal from the Commissioner's denial of benefits for further development of the evidence.'" Longbardi, 2009 WL 50140, at *22 (quoting Rivera v. Barnhart, 379 F. Supp. 2d 599, 604 (S.D.N.Y. 2005)). However, if "there is substantial evidence of disability in the administrative record, [the reviewing court] may decide to reverse the Commissioner's decision, make a determination of disability and remand solely for the calculation of benefits." Id. (internal quotation marks omitted). "Reversal and entry of judgment for the claimant is appropriate only when the record

provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." Allen ex rel. Allen v. Barnhart, No. 05 Civ. 7855, 2006 WL 2255113, at *4 (S.D.N.Y. Aug. 4, 2006).

   B.   Determination of Disability

   A claimant is disabled under the Social Security Act and therefore entitled to disability benefits if he can demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also Hahn, 2009 WL 1490775, at *6; Marrero v. Apfel, 87 F. Supp. 2d 340, 345-46 (S.D.N.Y. 2000). The disability must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

      1.   The Five-Step Sequential Analysis

   To determine whether a claimant is entitled to disability benefits, the Commissioner employs a five-step sequential analysis. In employing this five-step analysis, the Commissioner must consider objective medical facts, diagnosis or medical

opinions based on these facts, subjective evidence of pain or disability, and the claimant's educational background, age, and work experience.  Hahn, 2009 WL 1490775, at *7; see also Brown, 174 F.3d at 62.

First, the claimant must demonstrate that he is not currently engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i) & (b).

Second, the claimant must prove that he has a severe impairment which "significantly limits his physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(a)(4)(ii) & (c).

Third, if the impairment is listed in 20 C.F.R. § 404, Subpt. P, App. 1, or is the substantial equivalent of a listed impairment, the claimant is automatically considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (d).

Fourth, if the claimant's impairment is neither listed nor equal to any listed impairment, he must prove that he does not have the residual functional capacity to perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv) & (e); Longbardi, 2009 WL 50140, at *23 (citing Rosa, 168 F.3d at 77, and Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)).  Residual functional capacity is "the most [a claimant] can still do" after considering the limitations that affect the claimant's ability to do work-related physical and mental activities.  20 C.F.R. § 404.1545(a)(1).  In

determining a claimant's residual functional capacity, the ALJ must consider the totality of the record giving weight to every medical opinion, regardless of its source.  20 C.F.R. § 404.1527.

Finally, if the claimant satisfies his burden of proof on the first four steps, the burden shifts to the Commissioner to demonstrate that there is alternative substantial gainful employment in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v) & (g); Longbardi, 2009 WL 50140, at *21 (citing Rosa, 168 F.3d at 77, and Bapp, 802 F.2d at 604). "Normally, in meeting his burden on this fifth step, the Commissioner can rely on the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, commonly referred to as 'the Grids.'" Delacruz v. Astrue, No. 10 Civ. 5749, 2011 WL 6425109, at *10 (S.D.N.Y. Dec. 1, 2011).  These matrices classify occupations as skilled, semi-skilled, and unskilled (20 C.F.R. § 416.968); required physical exertion as sedentary, light, medium, heavy, and very heavy (20 C.F.R. § 416.967); and the applicant's age as younger (under age 50), "closely approaching advanced" (age 50-54), or advanced (age 55 or older).  20 C.F.R. § 404.1563(c)-(e).

The ALJ's decision must explain the analysis and must address all pertinent evidence.  Allen, 2006 WL 2255113, at *10 & n.117 (S.D.N.Y. Aug. 4, 2006).  "It is self-evident that a determination by the [ALJ] must contain a sufficient explanation

of [his] reasoning to permit the reviewing court to judge the adequacy of [his] conclusions." <u>Pacheco v. Barnhart</u>, No. 03 Civ. 3235, 2004 WL 1345030, at *4 (E.D.N.Y. June 14, 2004) (quoting <u>Rivera v. Sullivan</u>, 771 F. Supp. 1339, 1354 (S.D.N.Y. 1991)).

> 2.   <u>The Treating Physican Rule</u>

"The 'treating physician's rule' is a series of regulations . . . detailing the weight to be accorded a treating physician's opinion." <u>Gallagher v. Astrue</u>, No. 10 Civ. 8338, 2012 WL 987505, at *14 (S.D.N.Y. March 22, 2012).  These regulations establish that a treating physician's opinion regarding the nature and severity of a plaintiff's impairment(s) "will be given 'controlling weight' if the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the record].'" <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); <u>see also</u> <u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000) (quoting 20 C.F.R. § 416.927(d)(2)); <u>Longbardi</u>, 2009 WL 50140, at *24 (citing <u>Green-Younger</u>, 335 F.3d at 106).  Even if the treating physician's opinion conflicts with other medical evidence, the ALJ must still consider various factors to determine what weight the opinion will be given.  These factors include the length of the treatment relationship, the nature of the relationship, the consistency with other medical evidence in the record, whether

the opinion involves the specialty of the physician, and any other factors that may be relevant. <u>Halloran</u>, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)); <u>Fox v. Astrue</u>, No. 6:05 Civ. 1599, 2008 WL 828078, at *8 (N.D.N.Y. March 26, 2008). Failing to provide "good reasons" for not crediting a treating source's opinion is a ground for remand. <u>Longbardi</u>, 2009 WL 50140, at *25 (citing <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999)); <u>see also</u> <u>Halloran</u>, 362 F.3d at 32 (citations omitted).

### 3.   <u>Credibility Determinations</u>

In determining whether a claimant is disabled, the SSA must consider all of the claimant's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.[2]   20 C.F.R. § 404.1529(a).

> The [SSA] regulations set forth a two-step process to evaluate a claimant's testimony regarding her symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.

---

[2]   "Symptoms" are the claimant's own description of his physical or mental impairments.   20 C.F.R. § 404.1528(a). "Objective medical evidence" means medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c).   20 C.F.R. § 404.1512(b)(1).   "Other medical evidence" is defined in §§ 404.1512(b)(2)-(b)(6) and 404.1513(b) and (d).

Murphy v. Barnhart, No. 00 Civ. 9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citations and quotation marks omitted). Objective medical evidence is a "useful indicator" of a claimant's symptoms, but a claimant's statements about the effect of his symptoms may not be rejected solely because they are not substantiated by objective medical evidence. 20 C.F.R. § 404.1529(c)(2). Daily activities also constitute a relevant factor when considering the severity of an impairment. 20 C.F.R. § 416.929(c)(3)(i).

"If the claimant's statements about her symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility." Murphy, 2003 WL 470572, at *10. "In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." Id. (citing Rivera v. Apfel, No. 94 Civ. 5222, 1999 WL 138920, at *8 (S.D.N.Y. March 15, 1999)); see also Lugo v. Apfel, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998). In determining the extent to which symptoms affect the claimant's capacity to perform basic work activities, the ALJ must also consider any "inconsistencies in the evidence and . . . any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4).

If the ALJ finds that a claimant is not credible, he must set forth the reasons for that finding "with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1998)(citing Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 643 (2d Cir. 1983)); see also Osorio v. Barnhart, No. 04 Civ. 7515, 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006) (finding that a credibility determination will "be set aside if it is not set forth 'with sufficient specificity to enable [a reviewing court] to decide whether [it] is supported by substantial evidence.'"). A reviewing court must defer to an ALJ's finding regarding a claimant's credibility when it is supported by substantial evidence. Id. (quoting Aponte v. Secretary of Health and Human Services, 728 F.2d 588, 591 (2d Cir. 1984)).

Discussion

The ALJ found that the plaintiff had not engaged in substantial gainful activity since September 5, 2002, and that he had the following severe impairments: "status post myocardial infarction, status post coronary bypass grafting surgery times 3, chronic obstructive pulmonary disease and diabetes mellitus, hypertension, hypercholesterolemia and chronic ischemic heart disease." (AR at 24). After finding that the plaintiff's impairments did not meet or equal a listed impairment, the ALJ

16

found that Mr. Raja had "the residual functional capacity to perform the full range of light work" and therefore was unable to perform his past relevant work as an auto mechanic and auto mechanic supervisor.  (AR at 25-28).   In determining the plaintiff's residual functional capacity, the ALJ discounted the opinion of Dr. Verma that Mr. Raja was "precluded from engaging in activities at a full sedentary level of exertion," (AR at 27) and ignored the opinion of Dr. Sindhwani, which set forth, among other findings, that Mr. Raja could sit for only two hours in an eight hour workday, could occasionally lift less than 10 pounds and rarely lift 10 pounds, and would need to take 30-minute-long breaks to lie down every two to three hours (AR at 81).  Instead, the ALJ credited a 2007 disability analysis performed by a non-medical analyst who opined that Mr. Raja was "capable of performing a full range of light work activity."  (AR at 28, 262).  Assessing Mr. Raja as a younger individual with limited education who was able to communicate in English, the ALJ held that Mr. Raja was not disabled based on the Grids.  (AR at 28-29).

It is undisputed that the ALJ made significant legal errors in rendering his decision.  The Commissioner concedes that the ALJ failed to review significant evidence, namely the opinion of the plaintiff's cardiologist, Dr. Sindhwani, and improperly rejected the opinion of Dr. Verma.  (Memorandum of Law in

Response to Plaintiff's Motion for Judgment on the Pleadings and in Support of Defendant's Motion for Remand ("Def. Memo.") at 7-8). Mr. Raja adds that the ALJ improperly relied on the opinion of a lay person and erred in finding the plaintiff's testimony regarding his symptoms and pain not to be credible. (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings dated November 14, 2011 ("Pl. Memo."), at 10, 12-18). Thus, both parties agree that the ALJ's decision must be reversed. (Pl. Memo. at 21; Def. Memo. at 13).

The parties quarrel about the remedy. Mr. Raja asserts that there is sufficient evidence of disability in the record to permit a remand merely for the calculation of benefits. (Pl. Memo. at 20-21). The Commissioner argues that the case should be remanded to the Social Security Administration for further proceedings "to evaluate the opinion of Dr. Sindhwani and re-evaluate the opinion of Dr. Verma," as well as "obtain the opinion of a medical consultant" to "evaluate the medical evidence of record . . . and provide an opinion about [the] plaintiff's functional ability." (Def. Memo. at 12). The plaintiff generally has the better argument.

Before I address the parties' arguments, however, I note that there is an additional error in the ALJ's opinion that neither Mr. Raja nor the Commissioner initially briefed. Because

it is material to the onset date of the plaintiff's disability, it must be rectified in order to resolve this case properly.

The ALJ found that Mr. Raja had not engaged in substantial gainful activity since September 5, 2002, his alleged onset date. (AR at 24).   "In evaluating [a claimant's] work activity for substantial gainful activity purposes, [the] primary consideration will be the earnings . . . derive[d] from the work activity."   20 C.F.R. § 404.1574(a)(1); 20 C.F.R. § 416.974(a)(1).  The ALJ supported his conclusion by examining Mr. Raja's earnings, as required by the regulations, stating:

> An earning record on file . . . indicates that the claimant earned $18,200.00 in 2003, $18,200.00 in 2004, $6,600.00 in 2005, $7,800 in 2006 and $290.00 in 2007.[3] At the hearing, the claimant testified that he had worked as an automobile repairer from March 2005 through September 2007.   The earnings he received during those years was not at substantial gainful activity levels.

(AR at 24; 116-130).   Thus, the ALJ appears to have based this decision on the plaintiff's earnings from 2005 to 2007. Nonetheless, he asserted that Mr. Raja had not engaged in substantial gainful activity since mid-2002.  According to the regulations, however, Mr. Raja's earnings for the years 2003 and 2004 are significantly higher than the substantial gainful activity levels for those years.   20 C.F.R. §

---

[3] This final amount seems to be a scrivener's error.   The record reflects that Mr. Raja made $390.00 in 2007.  (AR at 116, 121, 128).

404.1574(b)(2)(ii)(B);    20    C.F.R.    §    416.974(b)(2)(ii)(B);
Shortridge v. Astrue, No. 1:11-cv-71, 2012 WL 1598012, at *6
(N.D. Fla. April 3, 2012) (stating that the substantial gainful
activity monthly earnings level for 2003 is $800 and for 2004 is
$810); Heard v. Astrue, No. 2:10CV77, 2012 WL 368678, at *11
(E.D. Mo. Feb. 3, 2012) (stating that earnings of $10,719.83 in
2003 and $10,359.60 in 2004 "were above the substantial gainful
activity levels for the years indicated"); see also Social
Security Online, Office of the Chief Actuary, Automatic
Determinations, Substantial Gainful Activity Amounts, available
at http://www.ssa.gov/oact/COLA/sga.html (last visited May 22,
2012).  Mr. Raja presented no evidence and made no argument that
any factor other than earnings should be considered in making the
determination of whether he engaged in substantial gainful
activity.   Therefore, the ALJ's finding is not supported by
substantial evidence in the record.   The record is clear,
however, that Mr. Raja has not engaged in substantial gainful
activity at least since December 31, 2004.  This comports with
the Commissioner's position that the plaintiff was likely
performing substantial gainful activity through the end of
calendar year 2004, but not after. (Letter of Susan C. Branagan
dated May 16, 2012, at 1).

       I turn now to the arguments the parties briefed.   In this
case, the record includes opinions of two treating physicians.

In February 2007, Dr. Sindhwani noted that Mr. Raja's medical impairments were severe enough to interfere occasionally with the attention and concentration needed to perform simple work tasks. (AR at 80). He could walk for 1-2 blocks, and sit for two hours out of an eight-hour work day, but he would need to take 30 minute breaks to lie down every two to three hours. (AR at 81). Dr. Sindhwani opined that Mr. Raja could lift and carry less than ten pounds occasionally, and ten pounds rarely. He could rarely twist and never stoop, crouch, squat, climb ladders, or climb stairs. (AR at 81). Dr. Sindhwani estimated that Mr. Raja would have to miss more than four days per month because of his condition. (AR at 82). In May 2007, Dr. Verma opined that Mr. Raja could lift and carry a maximum of two pounds, but could not lift and carry any amount of weight "occasionally," defined as up to one-third of a work day. (AR at 255). Dr. Verma also indicated that Mr. Raja could stand and walk for only two hours out of an eight-hour work day. (AR at 255). In October 2008, Dr. Verma opined that Mr. Raja could neither lift nor carry any amount of weight (AR at 452); that he could sit for six hours, stand for one hour, and walk for one hour out of an eight hour work day (AR at 453); and that he could sit for one hour, stand for five to ten minutes, and walk for 15 to 20 minutes without interruption (AR at 453). Dr. Verma estimated that these limitations had existed since late 2002 to 2003. (AR at 457).

On November 11, 2008, Dr. Verma opined that Mr. Raja could stand and walk for less than two hours in an eight-hour workday and sit for six hours with normal breaks.  (AR at 431).  He could rarely carry fewer than ten pounds, and never more than ten.  (AR at 431).  His mobility was restricted so that he could rarely twist, stoop, crouch, squat, and climb stairs, and never climb ladders.  (AR at 431).  Dr. Verma asserted that Mr. Raja would need to miss work more than four days per month.  (AR at 432).  According to Dr. Verma, these limitations had existed since 2003.  (AR at 432).

As the ALJ observed, Dr. Verma's opinions indicate that Mr. Raja "is precluded from engaging in activities at a full sedentary level of exertion."  (AR at 27); see 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than ten pounds at a time" and "involves sitting" along with "a certain amount of walking and standing."); Ferraris v. Heckler, 728 F.2d 582, 587 n.3 (2d Cir. 1984) (citing Social Security Ruling 83-10 and stating that sedentary work generally requires six hours of sitting during an eight-hour workday).  Dr. Sindhwani's opinion is consistent with this conclusion.

As noted above, a treating physician's opinion "will be given 'controlling weight' if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence [in the record]." Green-Younger v. Barnhart, 335 F.3d
at 106 (quoting 20 C.F.R. § 404.1527(d)(2)).   The Commissioner
points to a series of x-rays and electrocardiograms, most
performed or ordered by Dr. Verma, that purportedly undermine
these opinions.   (Def. Memo. at 10).   However, a treating
physician's opinion may not be rejected "solely on the basis that
the opinions conflicted with the physician's own clinical
findings." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998).
Indeed, that is the precise error that the ALJ made.  (AR at 27).
Here, as in Balsamo, "the ALJ did not cite any medical opinion to
dispute the treating physicians' conclusions."  143 F.3d at 81.
Therefore, the opinions of Drs. Verma and Sindhwani should have
been given controlling weight.

In addition, Mr. Raja's statements regarding his pain and
fatigue are not inconsistent with his treating physicians'
opinions.   He testified that he had pain and numbness in his left
leg and both feet, as well as constant pain in his shoulder.  (AR
at 44-45).   He complained that he experienced shortness of breath
if he walked longer than 15 minutes or farther than two blocks --
which is the distance he is required to walk to visit his doctor.
(AR at 38, 51).   The plaintiff points out that the Commissioner
concedes that he suffers from impairments that produce pain,
including prior coronary bypass surgery, chronic obstructive
pulmonary disease and diabetes mellitus, hypertension,

hypercholesterolemia, and chronic ischemic heart disease. (AR at 24). Indeed, the ALJ admitted that these impairments "could reasonably be expected to cause the alleged symptoms." (AR at 28). Where a claimant's complaints of pain and fatigue "are internally consistent and consistent with common symptoms" of his illness, the diagnosis of his condition "bolsters the credibility" of his complaints. Green-Younger, 335 F.3d at 108. But rather than crediting Mr. Raja's testimony or setting forth specific inconsistencies in the record which led him to find the plaintiff not credible, as required, see, e.g., Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988); Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 643 (2d Cir. 1983); Harwood v. Apfel, 186 F.3d 1039, 1044-45 (8th Cir. 1999), ALJ Borda reasoned that Mr. Raja's statements concerning the intensity and effects of his symptoms "are inconsistent with the above residual functional capacity assessment." (AR at 28). However, the residual functional capacity assessment was based on the ALJ's mistaken rejection or disregard of the opinions of Mr. Raja's treating physicians. This was error. Mr. Raja's statements were entitled to credence from the ALJ because they were consistent with medical evidence.[4]

---

[4] The plaintiff charges that ALJ Borda was biased -- as evidenced by his comment at the hearing that "there are too many people, frankly, who come here from other countries who don't quite tell the truth, and I have a lot of them coming through here" -- and that bias resulted in the adverse credibility finding. (Pl.

See, e.g., Simmons v. United States Railroad Retirement Board, 982 F.2d 49, 56 (2d Cir. 1992); Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983).

Therefore, substantial evidence of record shows that Mr. Raja's residual functional capacity allowed him to perform, at best, sedentary work.  In addition, Mr. Raja is illiterate in English.[5]  20 C.F.R. § 404.1564(b)(1) ("We consider someone illiterate if the person cannot read or write a simple message . . . even though the person can sign his or her name.").  A glance at the Grids reveals that an illiterate individual who can perform only sedentary work should be considered disabled from the date that he turns 45.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.17; Social Security Ruling ("SSR") 96-9P, 1996 WL 374185, at *2 n.3 ("'Younger individuals' age 45-49 who are

---

Memo. at 12; AR at 49).  It is not necessary to the resolution of this case to determine the reason for the ALJ's erroneous credibility determination.  Nevertheless, the ALJ's comment was plainly inappropriate.

[5] The ALJ found that Mr. Raja was "able to communicate in English." (AR at 28).  However, as SSR 96-9P makes clear, an individual aged 45-49 who is limited to sedentary work and is either unable to communicate in English or illiterate is disabled. SSR 96-9P, 1996 WL 374185, at *2 n.3.  The ALJ does not appear to have made a finding regarding Mr. Raja's literacy.  To the extent that his finding that Mr. Raja could communicate in English was intended to indicate literacy, that is error.  Mr. Raja's testimony that he is unable to read or write anything in English except his name and address is clear.  (AR at 37-38).  It is bolstered by the testimony that he did not read the information sent to him by the Social Security Administration; rather, his son read it to him. (AR at 37).

unable to communicate in English or who are illiterate in English and who are limited even to a <u>full</u> range of sedentary work must be found disabled under rule 201.17 in Table No. 1."); <u>see also</u> 20 C.F.R. § 404.1563(b) (requiring application of the age categories in the regulations for the entire "period for which [the Social Security Administration] must determine if [the claimant] is disabled"); <u>Delacruz v. Astrue</u>, No. 10 Civ. 5749, 2011 WL 6425109, at *23 (S.D.N.Y. Dec. 1, 2011) (same).  Here, however, Mr. Raja turned 45 on December 25, 2004 -- one week prior to the beginning of 2005, which is the first full year (since the alleged onset date in September 2002) for which it is clear that Mr. Raja did not engage in substantial gainful activity.

"Remand for the calculation of benefits is appropriate when a court finds persuasive proof of disability and no obvious reason to conclude that a more complete record might bolster the Commissioner's position." <u>Borus v. Astrue</u>, No. 09 Civ. 4723, 2011 WL 2574395, at *4 (S.D.N.Y. June 24, 2011) (citing <u>Parker v. Harris</u>, 626 F.2d 225 235 (2d Cir. 1980)).  Here, substantial medical evidence, the plaintiff's testimony, and the regulations establish that Mr. Raja has been disabled at least since January 1, 2005.  Therefore, I am remanding this case for calculation of benefits from that date.  Such a remand "is particularly warranted" here, where Mr. Raja "'has already waited a

substantial amount of time since first applying for benefits.'" Borus, 2011 WL 2574395, at *4 (quoting Basalmo, 142 F.3d at 82).

In addition, on remand the Commissioner should determine whether Mr. Raja's disability onset date is earlier than January 1, 2005.  In particular, the Commissioner must determine whether Mr. Raja engaged in substantial gainful activity during the period after his alleged disability onset date of September 5, 2002, until January 1, 2005.  Additionally, because the medical evidence supports a finding that Mr. Raja was not able to perform the full range of sedentary work, his disability onset date could be earlier than the date he turned 45.  See SSR 96-9P, 1996 WL 374185, at *5-7 (discussing the erosion of the occupational base for claimants who cannot perform a full range of sedentary work). Importantly, an inability to perform the full range of sedentary work does not compel a finding of disability.  Instead, in such cases, "the medical-vocational rules must be used as a framework for considering the extent of the erosion of the sedentary occupational base."  Id. at *4.  Such a determination may require the use of a vocational resource, such as a vocational expert. Id. at *6, *9.  Because I cannot answer with certainty whether Mr. Raja's residual functional capacity rendered him disabled prior to January 1, 2005, this determination is best left to the Commissioner.  Zubizarreta v. Astrue, No. 08 CV 2723, 2010 WL 2539684, at *8 (E.D.N.Y. June 16, 2010 (remanding for

27

determination of onset date); <u>Gibson v. Astrue</u>, No. 07 Civ. 2845, 2009 WL 1181251, at *3 (S.D.N.Y. April 30, 2009) (same); <u>Nixon v. Astrue</u>, No. 07CV1234, 2008 WL 2705164, at *6 (S.D. Cal. July 8, 2008 (remanding for a calculation of benefits and determination of onset date); <u>Frontanez-Rubiani v. Barnhardt</u>, No. Civ.A. 03-1514, 2004 WL 2399821, at *7 n.10 (E.D. Pa. Sept. 30, 2004) ("Upon remand for a calculation of benefits, the [Social Security Administration] shall determine the claimant's onset date."). This determination should be made in accordance with Social Security Rulings 96-9P and 83-20.  <u>See</u> SSR 96-9P, 1996 WL 374185; SSR 83-20, 1983 WL 31249 (outlining process to determine disability onset date).  The Commissioner should "conduct[] and resolve[] [the proceedings] expeditiously.  <u>Uffre v. Astrue</u>, No. 06 Civ. 7755, 2008 WL 1792436, at *8 (S.D.N.Y. April 18, 2008).

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings (Docket No. 8) is granted in part, and the Commissioner's motion for remand (Docket No. 13) is granted in part.  The Commissioner's decision is reversed, and the Commissioner is directed to provide Social Security Disability Insurance Benefits and Supplemental Security Income to the plaintiff.  The case is remanded to the Commissioner to calculate the amount of disability benefits due the plaintiff for the period beginning on January 1, 2005, and to determine, consistent

with this opinion, whether the plaintiff is entitled to benefits for any prior period.

The Clerk of the Court is requested to enter judgment accordingly and close this case.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 23, 2012

Copies mailed this date to:

Carolyn A. Kubitschek, Esq.
Lansner Kubitschek Schaffer
325 Broadway, Suite 201
New York, New York  10007

Susan C. Branagan, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York  10007